**Opinion issued June 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00385-CV

———————————

**VLADIMIR VAK, Appellant**

**V.**

**NET MATRIX SOLUTIONS, INC., Appellee**

**On Appeal from the County Civil Court at Law No 2**
**Harris County, Texas**
**Trial Court Case No. 1019243**

## O P I N I O N

This is an interlocutory appeal of an order denying Vladimir Vak's special appearance. Vak argues that the trial court lacks jurisdiction because his contract with Net Matrix Solutions, Inc. does not contain a forum-selection clause and Vak's contacts with Texas are insufficient to establish jurisdiction. We affirm.

## Background

Vladimir Vak, a resident of California, sought employment by posting his resume online in 2012. Net Matrix, a computer consulting firm located in Houston, found Vak's resume and contacted him about temporary work on a contract basis for a company located in California. Vak agreed to accept this work. Under the parties' written agreement, Net Matrix would make a proposal to the California company that it retain Vak at a proposed hourly rate. Net Matrix also bore responsibility for invoicing the California company and paying Vak for his services. Vak would bill Net Matrix, not the California company, for his time. The agreement included the following clause:

> 17. Governing Law; Venue of Litigation
> This Agreement shall be governed by and construed under the laws of the state of Texas. The parties agree that this Agreement is made in Harris County, Texas, and that exclusive venue for all litigation arising under or in connection with this Agreement shall be in the courts of Harris County, Texas.

A few days after the parties entered into this agreement, Vak began working on the project in California.

According to Net Matrix, Vak gave notice approximately two weeks later that he was resigning from his position as a subcontractor for Net Matrix, effective two days after the notice. Vak gave as his reason for resigning that he had received a new job, starting the following week.

Net Matrix sued Vak in Harris County, alleging that Vak had breached the parties' agreement. Vak filed a special appearance, motion to dismiss for forum non conveniens, and, subject thereto, an original answer. The trial court denied Vak's special appearance, and Vak filed this interlocutory appeal.

On appeal, Vak presents one legal issue: whether the trial court properly denied his special appearance. Vak presents two arguments to support his personal jurisdictional challenge. First, he argues that the parties' agreement contains a venue-selection provision, not a forum-selection provision, and that the trial court therefore erred in finding that it has jurisdiction over Vak. Second, Vak argues that Net Matrix presented evidence of its unilateral acts in Texas, not acts directed by Vak toward Texas, and thus the evidence was legally insufficient to support the trial court's assertion of personal jurisdiction over him.

## Standards of Review

### A.     Personal Jurisdiction

We apply the concept of "purposeful availment" to determine whether Texas courts have personal jurisdiction over a nonresident defendant. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In order for a court to have personal jurisdiction, "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

3

laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Among other requirements not relevant to this appeal, the concept of "purposeful availment" requires that courts consider only the defendant's contacts with the forum state, not the unilateral activities of other parties. *Id.* at 785. The acts must be "'purposeful' rather than fortuitous." *Id.* Parties "who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). And the "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* (citation omitted). "Merely contracting with a Texas resident does not satisfy the minimum contacts requirement." *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citations omitted). "Nor is jurisdiction justified by the single fact that a contract is payable in Texas." *Id.* (citation omitted).

Further, "assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice." *Michiana*, 168 S.W.3d at 795 (quoting *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex. 1966)). "Factors courts consider are the burden on the defendant, the forum state's interest in adjudicating the controversy, the plaintiff's interest in obtaining efficient resolution of the case, and the shared interest of states in furthering their respective interests."

*Id.* at 799 (citing *Burger King*, 471 U.S. at 477). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

"Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). Although the existence of personal jurisdiction is a question of law, "that determination must sometimes be preceded by the resolution of underlying facts." *Int'l Elevator Co. v. Garcia*, 76 S.W.3d 778, 781 (Tex. App.—Houston [1st Dist.] 2002, no pet.). When the trial court has not filed findings of fact or conclusions of law, we will presume that the court resolved all questions of fact in support of its order. *Valsangiacomo v. Americana Juice Imp., Inc.*, 35 S.W.3d 201, 205 (Tex. App.—Corpus Christi 2000, pet. dism'd w.o.j.); *see also Black v. Dallas Cnty. Child Welfare Unit*, 835 S.W.2d 626, 630 n.10 (Tex. 1992) (citing *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979)).

A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. TEX. CIV.

PRAC. & REM. CODE ANN. § 17.042 (West 2008); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). We can consider both a plaintiff's pleadings and its response to the defendant's special appearance in determining whether the plaintiff satisfied its burden. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658.

If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant who makes a special appearance has the burden of negating all bases of jurisdiction in those allegations. *Id.*; *Moki Mac*, 221 S.W.3d at 574. "Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law." *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex. App.—Corpus Christi 1999, no pet.).

If the plaintiff does not plead sufficient jurisdictional facts, the defendant can meet its burden to negate jurisdiction by proving it is not a Texas resident. *Kelly*, 301 S.W.3d at 658–59. If the plaintiff does plead sufficient jurisdictional facts, "[t]he defendant can negate jurisdiction on either a factual or legal basis."

6

*Id.* at 659. Among the ways to negate jurisdiction, "the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; [or,] for specific jurisdiction, that the claims do not arise from the contacts[.]" *Id.*

## B.    Forum-Selection Clauses

Texas courts must enforce forum-selection clauses in contracts between the parties, "unless the party opposing enforcement 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *In re Automated Collection Techs.*, 156 S.W.3d 557, 559 (Tex. 2004, orig. proceeding) (quoting *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004, orig. proceeding)). "[F]orum-selection clauses are prima facie valid." *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 614 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (collecting cases and discussing development of Texas law). We interpret forum-selection clauses using contract-construction principles because "[a] forum-selection clause is a creature of contract." *Id.* at 611 (citing *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied)). In doing so, "our primary goal is to give effect to the written expression of the parties' agreement." *Id.* at 615 (citing *Sw. Intelecom*, 997 S.W.2d at 324).

## Personal Jurisdiction over Vak

### A.    Net Matrix Satisfied its Pleading Obligation

We must first consider whether Net Matrix has met its burden of pleading facts sufficient to demonstrate the trial court's personal jurisdiction over Vak. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 574. In doing so, we may look at both Net Matrix's petition and its responses to Vak's special appearance. *Touradji*, 316 S.W.3d at 23.

The petition states that Vak is an individual resident of San Francisco, California, and "has done business within the state of Texas, including the transactions that gave rise to the claims asserted in this lawsuit." According to the petition, Vak signed an agreement with Net Matrix. The petition incorporated the agreement by reference. On its face, the agreement shows that Net Matrix would perform at least some of its obligations under the agreement in Texas. Under the Texas long-arm jurisdiction statutes, "a nonresident does business in this state if the nonresident contracts by mail or otherwise with a Texas resident and *either* party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(a) (emphasis added). The petition thus sufficiently alleges that Vak did business in this state in connection with the parties' agreement. *Id.*

In its responses to Vak's special appearance, Net Matrix also argued for the application of Section 17 of the parties' agreement, containing the selection of Harris County as the "exclusive venue for all litigation arising under or in connection with [the] Agreement." These allegations also demonstrate that Vak has personally availed himself of "the privilege of conducting activities within [Texas], thus invoking the benefits and protections of its laws." These allegations provide additional support for Net Matrix's pleading burden. *Michiana*, 168 S.W.3d at 784–85.

## B.      Vak Did Not Negate Personal Jurisdiction

The burden thus shifts to Vak to negate all bases of the trial court's jurisdiction. *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 574. Vak presents two arguments against the trial court's ruling, but his arguments attack alternative bases on which the trial court may have denied Vak's special appearance. Therefore, Vak must prevail on both arguments to meet his burden of negating all bases of jurisdiction. *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 574.

We first consider Vak's argument that Section 17 of the parties' agreement is a venue-selection clause, not a forum-selection clause, and therefore cannot serve to establish the trial court's personal jurisdiction. Vak first observes that the agreement refers to the venue—not the forum—for the litigation. Vak correctly

observes that, "[a]lthough the terms are not always used with precision, forum and venue are not synonymous." *Liu v. CiCi Enters., LP*, No. 14–05–00827–CV, 2007 WL 43816, at \*2 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (mem. op.). "Forum pertains to the jurisdiction, generally a nation or State, where suit may be brought." *Id.* (citing *Michiana*, 168 S.W.3d at 784). Venue, on the other hand, "concerns the geographic location within the forum where the case may be tried." *Id.*; *see also In re Great Lakes Dredge & Dock Co., LLC*, 251 S.W.3d 68, 79 (Tex. App.—Corpus Christi 2008, orig. proceeding). Thus, when parties agree merely that courts in a particular jurisdiction have venue or are proper venues for disputes and do not provide that the jurisdiction has exclusive venue, the agreement does not establish the parties' consent to the jurisdiction of the courts in question. *See, e.g.*, *Phoenix Network Techs.*, 177 S.W.3d at 615 (holding that words "shall" and "the" in venue-selection clause established mandatory and exclusive venue, respectively, and thus clause constituted forum-selection provision).

On the other hand, clauses providing for exclusive venue in a particular locale are treated as forum-selection clauses. For example, in *Michiana*, the Supreme Court of Texas considered a contract providing that the parties "agree that if any dispute between us is submitted to a court for resolution, such legal proceeding or suit shall take place in the county in which [Michiana's principal] offices are located," which happened to be in Indiana. 168 S.W.3d at 781, 792.

10

The Court stated that this language constituted a "forum-selection clause," holding that its enforcement was mandatory and that the trial court therefore lacked jurisdiction in the absence of contacts between Michiana and Texas that would otherwise support jurisdiction. *Id.* at 793–94.

This Court has also construed similar contract language as constituting a forum-selection clause. In *Phoenix Network Technologies*, we considered a contract that stated, "The parties hereby agree that this Agreement and the provisions hereof shall be construed in accordance with English law and the venue for resolution of any disputes arising out of this Agreement shall be the United Kingdom." 177 S.W.3d at 610. We held that this language constituted a forum-selection clause by nature of its exclusivity. *Id.* at 615. We explained,

> [T]he forum-selection clause could not more plainly require that any disputes arising out of the . . . Agreement be litigated in the U.K. The use of "shall" generally indicates a mandatory requirement. Additionally, the forum-selection clause provides that "*the* venue" for suit will be in the U.K., not "*a*" venue for suit. Use of the definite article indicates that the parties intended for the U.K. to be the exclusive venue.

*Id.* at 615 (citations omitted). "[C]ourts have had little trouble interpreting provisions like the one here—which provide that *disputes be litigated* in a particular place, rather than that a particular place *be the proper venue*—to designate an exclusive, and thus valid, forum." *Id.* at 615–16 (collecting cases).

11

Like the contracts in *Michiana* and *Phoenix Network Technologies*, Vak's agreement with Net Matrix unambiguously selects a particular venue and makes it exclusive. The agreement requires that "*exclusive* venue for all litigation arising under or in connection with this Agreement shall be in the courts of Harris County, Texas." (emphasis added). To read this as Vak suggests, as not constituting Vak's consent to the jurisdiction of Harris County courts, would be to ignore the term "exclusive" entirely. Vak argues that this interpretation is incorrect under Texas law.

First, he argues that by reading Section 17 as a forum-selection clause this Court would be adding a term to the agreement. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (courts must not rewrite parties' agreement). But Vak does not explain the relevance of this principle to the language here, nor does he provide any alternative explanation for the agreement's use of the term "exclusive venue." Contrary to Vak's position, our construction of the agreement gives meaning to all of its terms. *See, e.g., SA-OMAX 2007, L.P. v. Certain Underwriters at Lloyd's, London*, 374 S.W.3d 594, 598 (Tex. App.—Dallas 2012, no pet.) (courts must prefer interpretations of contracts that give meaning to all of their terms).

Vak also argues that courts treat language similar to that in Section 17 as constituting a venue-selection clause, not a forum-selection clause. As support, he

relies primarily upon *Global Packaging, Inc. v. Superior Court of Orange County*, 196 Cal. App. 4th 1623 (Cal. Ct. App. 2011). In that case, a California Court of Appeal held that a contract, parts of which were missing from the record, did not contain a forum-selection clause when it specified that "[a]ny controversy or claims arising out of or relat [ ] to this Agreement shall be venued only in the state or federal court in and [ ] (a) Orange County, California or (b) the jurisdiction in which the Software is located . . . ." 196 Cal. App. 4th at 1627 (brackets indicate text which was cut off in copy of agreement before California court). The *Global Packaging* court held that such language did not imply the defendant's consent to personal jurisdiction. *Id.* at 1634–35. But the clause in that case was not exclusive to a single location; it provided for at least two proper venues. *Id.* Moreover, it did not include language that the agreement "was made" in the particular forum. In contrast, Vak's employment agreement recites that it "was made" in Harris County, Texas. Such a recital fixes a jurisdictional fact in the forum. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(a) (nonresident does business in Texas if he contracts with Texas resident and either party is to perform in whole or in part in Texas). Like the contracts in *Michiana* and *Phoenix Network Technologies*, the particular language of the contract before us controls our decision.

Vak also argues that *Luxury Travel Source v. American Airlines, LLC*, 276 S.W.3d 154 (Tex. App.—Fort Worth 2008, no pet.), requires us to treat Section 17

13

as a venue-selection clause, rather than a forum-selection clause. In *Luxury Travel*, the airline accused travel agencies of improperly buying and selling frequent flyer miles. *Id.* at 159. None of the travel agencies had offices in Texas, however, so each filed a special appearance, each of which the trial court denied. *Id.* at 160. In concluding that the trial court lacked personal jurisdiction over some of the defendants, the appellate court observed that the forum-selection clause was binding only on lawsuits brought against the airline, not those suits brought by the airline. *See id.* at 165–66. In contrast, the forum-selection clause between Vak and Net Matrix controls suits by either party to the contract.

Vak has failed to negate the first basis of jurisdiction upon which the trial court's decision could have rested, namely the presence of a forum-selection clause. He does not argue that the trial court's exercise of jurisdiction on this basis is inconsistent with traditional notions of fair play and substantial justice. *See*, *e.g.*, *Burger King*, 471 U.S. at 477; *Michiana*, 168 S.W.3d at 798. He therefore has failed to demonstrate that the trial court erred in denying his special appearance, and we do not reach his second argument, that he does not have sufficient minimum contacts with Texas to confer personal jurisdiction over him upon the trial court.

## Conclusion

We affirm the decision of the trial court.


                        Harvey Brown
                        Justice

Panel consists of Justices Keyes, Bland, and Brown.